# 23-496

RECEIVED
2023 JUL 24 PM 2: 20
CLERK'S OFFICE
U.S. COURT OF APPEALS

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

**ROBERT CRAIG CASSIDY,**

**PLAINTIFF-APPELLANT,**

**V.**

New York State Insurance Fund; New York State Workers' Compensation Board; Honorable Letitia James, Attorney General of the State of New York; Brian M. Matula, Assistant Attorney General; Joseph Slater, ESQ., Personally; Kelsey Lynn Raga, Personally; Freida Foster, Personally and as Member of the New York State Workers' Compensation Board; Ellen O. Paprocki, Personally and as Member of the New York State Workers' Compensation Board; Linda Hull, Personally, and as Member of the New York State Workers' Compensation Board; Frederick M. Ausili, Personally and as Member New York State Workers' Compensation Board; Loren Lobban, Personally and as Member New York Workers' Compensation Board; Steven A. Crain, Personally and as Member New York State Workers' Compensation Board; Mark R. Staasko, Personally and as Member New York State Workers' Compensation Board;

# 23-496

--------------------------------------------------------------------------------

Samual G. Williams, Personally and as Member New York State Workers' Compensation Board; Mark Higgins, Personally and as Member New York State Workers' Compensation Board; Darlene Dorsett, Personally,

Defendants-Appellees.

On Appeal from the United States District Court for the Northern District of New York

## BRIEF FOR PLAINTIFF

**ROBERT CRAIG CASSIDY   PLAINTIFF-APPELLANT**

43 PLEASANT STREET

RUTLAND, VERMONT 05701

518 585-6795

# QUESTIONS PRESENTED/AUTHORITIES CITED

1. In Parratt v. Taylor, 451 U.S. 527 (1981) the U.S. Supreme Court held that

"Although he has been deprived of property under color of State Law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of unauthorized failure of agents of the State to follow established state procedure." 451 U.S. 543

See footnote 2 Appellant's Appendix page 6. July 2019 Attorney General States:

"...As is germane to the instant action, the IC-2 system is also utilized by the Board to issue penalty notices and, ultimately, to issue judgments to non-compliant employers, as well as to organize and **adjudicate** all employer-initiated redetermination requests- **certainly established state procedure !**

2. Edelman v. Jordan , 415 U.S. 651 Supreme Court held that even when a State withholds money due victims, U.S. Courts cannot order that those funds be re-imbursed out of the State treasury. It appears that the justice Appellant quoted on page 15 paragraph 52 forgot about Edelman.

3.IN RE: Christina Castillo (2017) New York State Appellate Division Third Department

Page 15 paragraph 53 of Appellant's brief also suggests that before the justice who advocates victims such as Appellant turn to the New York State Appellate Division for relief of WCB penalty charges that justice read IN RE: Christina Castillo (2017) who was denied any relief from an $86,000.00 penalty.

4. Boddie v. Connecticut, 401 U.S. 371 (1971) held that a $60.00 fee prevented residents from accessing courts in Connecticut. WCB forces payment of non-refundable $22,500.00 fine before becoming " compliant."

# STATEMENT OF THE CASE

1. A COMMON SAYING CURRENTLY CIRCULATING STATES:
    "INSANITY IS DEFINED AS DOING THE SAME THING OVER, AND OVER,
    But expecting a different result"

The saying is attributed to Albert Einstein, which caused me to respect

Its origins

2. This will be my second submission to the Second Circuit as I appeal

my third submission to the Northern District of New York District Court.

3. The 2nd Circuit might ask why would Appellant bother to submit myself to

this much punishment without receiving any benefit?

4. Appellant has been engaged with the state defendants some eight years,

and is eighty years and six months old. Why not just give up?

5. During the Vietnam War Appellant enlisted as a private E-1 recruit,

attended OCS (officer candidate school), and was commissioned a 2nd

Lieutenant. When my company commander resigned as his wife's mother and

father were killed in a motorcycle accident, I was given command of 182

officers and enlisted men.

6. The officer's oath that Appellant took contained the phrase "...defend the Constitution of the United States against all enemies foreign and domestic ...."

Though technically freed from that oath by my honorable discharge,

Appellant cannot run from what senior members of the New York State

Government have done to me, and more importantly, how they have done

their work which Appellant argues abuses that same Constitution Appellant

swore to protect against all enemies foreign and DOMESTIC.

7. Appellant has been the victim of false argument in the Attorney General's

filings, of perjured sworn evidence in affirmations (actually the term would be

"bearing false witness"). Filings by the Attorney General have been delayed

to run the Statute of Limitations, documents required to be given to Pro-Se

litigants have been delayed until after the Court decisions.

8. The 2nd Circuit itself saw nothing wrong with the New York State Insurance

Fund altering documents and giving Appellant's paid insurance premiums of

almost $2,000.00 to God knows whom? Appellant was never notified of

NYSIF action until four years after the incident. That "incident" resulted in a

$22,500.00 penalty being levied upon Appellant.

9. The 2nd Circuit saw nothing wrong with a Magistrate judge injecting a

cause of action Appellant NEVER requested into lawsuit 8:18-cv-00394

(hereinafter cv394) and then using that same cause of action created by the

Court itself to grant summary judgment to the State Defendants twice.

Finally, the 2nd Circuit chose to not even note the 14 month disappearance of

the 2018 so-called Rooker-Feldman judgment against Appellant alleged to

have been filed March 30, 2018. What kind of a state agency is so rich and

powerful that it is not even worth keeping track of $22,500.00?

10. Consider the above nine paragraphs "PREVIEWS OF COMING

ATTRACTIONS" as we begin our feature.

11. This action has seen no publicity on networks or news media. Before that

may occur , it is Appellant's intention to send a copy of this brief to each

member of the 2nd Circuit's "Judicial Council" and ask for en Banc

consideration from the Circuit Justices. Appellant believes in offering a fair

hearing of the kind he never received.

12. The State Actors have reduced Appellant to poverty and caused him to

lose his business. The old HP Vista computer Appellant used in all the cases

litigated previously has died or is in a fatal coma.

13  The first five pages of Appellant's exhibit Appendix are an introduction to case cv394 which spawned 5-21-cv-521.

14. Those five pages of exhibits filing were written in 2018 by former District Judge Brenda K. Sannes (now Chief Judge Northern District of NY).

15. For those unfamiliar with this five year old case, Judge Sannes writes better than Appellant and has done an excellent summary. ( For background, Appellant is a Dean's List graduate of Williams Collage which school back in the 1960's was often held out to be the nation's finest private liberal arts college.)

17. Appellant filed his initial action in this matter on April 2, 2018. State Defendants replied in May 2018 and sought dismissal invoking the Rooker-Feldman doctrine.

18. In essence, Rooker-Feldman denies a litigant access to U.S. District Court Jurisdiction if a state court has passed judgment on the issue at bar.

19. Appellant Cassidy was devastated regarding the Attorney General's Rooker-Feldman argument. Not being an attorney, Appellant had no idea such a strategy was legal and was virtually certain his federal court action would be dismissed. Six, yes SIX, months of sleepless nights ensued.

20. On November 5 2018 Judge Sannes found that a "Federal Question" did indeed exist in Plaintiff Cassidy's District Court filing and allowed the case to continue regardless of Rooker-Feldman issues.

21. Plaintiff Cassidy was given until December 4, 2018 to amend his cv394 complaint.

22. On December 4, 2018 Plaintiff Cassidy filed an amended complaint to which the State filed its reply in late June 2019 running the Statute of Limitations out on secondary issues favorable to the Plaintiff.

23. Once again the Attorney General raised the Rooker-Feldman issue. In this June 2019 filing the Attorney General induced a self-described "Senior Attorney" of the Workers' Compensation Board, one Joseph Slater, Esq., to swear under oath that The Workers' Comp Board had filed a judgment against Plaintiff Cassidy on April 30, 2018 thus invalidating Plaintiff's Federal Court action.

24. Remembering that old adage "fool me once shame on you, fool me twice shame on me," Plaintiff Cassidy finally became suspicious that the Attorney General was not playing fair as Cassidy could find no judgment papers in his carton of Court filings.

25. After taking four days off work in July 2019 to make three trips to

Elizabethtown New York (where a New York judgment would have been filed)

and one day to visit the Rutland County Superior Court which also had no

judgment, Plaintiff Cassidy filed a motion to end the Rooker-Feldman

nightmare.

26. Plaintiff Cassidy lost over one thousand dollars income chasing after the

non-existant judgment and incurred another $300.00 in travel expenses.

The Attorney General never even said "sorry" and the Northern District never

chastised the New York State Attorney General's office for its incompetence.

27. Appellant's Exhibit EX006 is a copy of the Attorney General's July 2019

reply to Appellant's attack on WCB Senior Attorney Slater's Rooker-Feldman

filing.

In a begrudging manner, the Attorney General admitted "Although the WCB's

IC-2 system showed that the judgment had been filed, it had not, in fact, been

filed (Docket 50 cv394).

Appellant had been trying by the summer of 2019 for over a year to have the

State Defendants admit that a pre-deprivation hearing would eliminate State

Error and grant Appellant 14th Amendment Constitutional due process.

Such result was not to be.

28. The Attorney General elected instead to brag about the power of the

"IC-2" Computer System "As is germane to the instant action, the IC-2 system

is also utilized by the Board to issue penalty notices and, ultimately, to issue

Judgments to non-compliant employers, as well as to organize and

**ADJUDICATE (emphasis mine)** all employer initiated redetermination requests.

(see footnote marked "2" at bottom of Attorney General's page 4.(EX006)

29. The Attorney General's comments in paragraph 28 above raise food for

thought. First, the obvious. IC-2 can contain incorrect data upon which the

State of New York will act to injure the public "...utilized by the Board to issue

penalty notices, and ultimately, to issue judgments to non-compliant

employers ...."

30. Second, Appellant fails to see how any Attorney General attorney or any

WCB attorney is doing anything other than gulping hearsay

by staring at the erroneous screen of IC-2. Did the State attorneys question

those who loaded the data into good old IC-2, did those attorneys balance

7

control totals of dollars loaded into good old IC-2?  How could $22,500.00

disappear  for 14 months??  Who pushes the judgment button of IC-2 or has

the State of New York already arrived at the next public nemesis…, artificial

intelligence ?   If you get caught in a fraud, blame the computer.

31.  As is germane to this instant action, a pre-deprivation hearing would have

been  vigorously contested and would have almost certainly caught the WCB's

error.  However, when it is so easy for government to take a citizen's funds why

should the State of New York bother with a pesky hearing ?  The  answer  is a

due process hearing guaranteed by the 14th Amendment of the U.S.

Constitution.

32.  The second paragraph on page 13 of a booklet titled **UNITED STATES**

**DISTRICT COURT  FOR  THE NORTHERN DISTRICT OF NEW YORK**

**PRO SE HANDBOOK**

Reads in part "…when a party to a lawsuit presents a document to the Court,
that party is verifying the accuracy and reasonableness of that document.
Federal Rule of Civil Procedure states that if such a submission is false,
improper, or frivolous, the party may be liable for monetary or other sanctions
(which could include an award of the prevailing party's attorney fees).

8

Pro-Se Cassidy received no financial consideration at all for his $1300.00

losses....

33. Again, for the record, the "missing judgment" was missing for some

FOURTEEN MONTHS, from April 2018 to July 2019.  Appellant asks those

reading this filing to remember not only the State incompetence but also the

fact that Plaintiff Cassidy found the missing judgment, not the State actors.

34. Now that the missing judgment was found it was levied "accidentally"

upon  Cassidy on November 14, 2019.   Exhibits EX007 and EX008  show  the

December 17, 2019  letter to the Court from the Attorney General .  Note the

first sentence of Paragraph two:

> First, this office and the WCB attorneys who are involved in the instant
> Litigation were not made aware that a judgment was filed against
> Mr. Cassidy until we received Mr. Cassidy's current application to this
> Court by ECF notice on December 5, 2019. (Ex007  Appendix  Exhibit)

35. Two Northern District Cases and Two 2nd Circuit filings have all been

about due process pre-deprivation hearing.  Once again the fact (the **Fact**)

that attorneys for the WCB and the Attorney General of the State  of New York

cannot control their client's actions should surely move some of you justices

to realize that the current NYSF/WCB/Attorney General system is broken.

9

36. Appellant calls your attention to Exhibit EX008 which is page two of the

Attorney General's letter. Half of the second paragraph reads:

> ...in the context of settlement, WCB offered to vacate
> the penalty in its entirety in exchange for mere discontinuance
> of this action -- an offer Mr. Cassidy rejected out of hand.
> Rather, as it stands now, Mr. Cassidy's price for a
> discontinuance of this litigation (which seeks to invalidate a
> $22,500.00 debt) is inexplicably in excess of $100,000.00
> (exhibit EX008)

37. First, Appellant notes for the record that the $22,500.00 penalty was

caused NOT because Appellant was failing to pay WCB premiums. Appellant's

Penalty was caused by NYSIF and WCB in secret forcing Appellant's Workers'

Comp policy to be cancelled in order to trade a $3,000 annual premium paid in

installments for a $22,500.00 penalty paid in a lump sum!

Second, Appellant began this mis-adventure with NYSIF and WCB in 2015.

September will mark eight years of abuse levied upon Appellant.

38. Back in 2015 Appellant was 73 years old and could lift twin and full size

mattresses by himself if delivery was needed. The most popular mattress then

and now was a queen size for the handling of which Appellant needed an

employee to help. Now at age 80 1/2 Appellant struggles to move twin

mattresses by himself so he has lost the mattress business entirely and the

approximately $20,000.00 annual income associated.

39. Plaintiff has been physically healthy until the current time, but is just plain

old. Unable to hire help because of the NYSIF/WCB litigation which prevents

Appellant from acquiring a Workers' Comp Policy, Appellant has lost his

business. The Attorney General calls " inexplicable" a valuation by Plaintiff of

$100,000.00 for eight years of life, the loss of a $115,000.00 building, and

the $10,000 to $20,000 loss of business income. Wonder how much the six

figure salaried assistant Attorney General would value eight years of his life?

40. Time to end this presentation with a close look at how the Magistrate

Judge sua sponte created his own cause of action in cv394 and used it to grant

summary judgment to State Defendants.

41. Appellant's exhibits EX009 through EX018 are the complete DECISION AND

ORDER" OF THE Magistrate Judge dated November 30, 2020.

42. Beginning on Appendix Exhibits page 9 the Magistrate states "Plaintiff

nowseeks to add seven named Defendants, as well as additional causes of

action." On pages 10, 11, and 16 the Magistrate Judge repeats his claim that

Appellant Cassidy seeks to add causes of action. Each reference is double

underlined in black for ease in locating.

43. Appellant will offer as rebuttal Appendix Exhibits EX019 through EX028

which are  Plaintiff/Appellant Cassidy's Application for Joinder of Parties dated

June 19 , 2020.

NOWHERE in PLAINTIFF/APPELLANT's twenty page "joinder" application,

Appellant says again, NOWHERE, does Plaintiff/Appellant Cassidy ask for

additional causes of action.

44. For the record, Plaintiff/Appellant Cassidy asked the Magistrate judge for

leave to file an interlocutory appeal to the 2nd Circuit on the joinder issue

which action was refused at  the Magistrate  Judge's  "discretion."

45. In closing this long brief, Appellant calls the justices attention to a certain

**"SUMMARY ORDER"** dated January 26, 2023.  Justices Leval, Cabranes, and

Nardini  found absolutely no merit in Appellant's filings citing Looney v. Black

702 F 3.d (2nd Circuit 2012).

12

46. Having notified NYSIF in September 2015 of a change of ownership in

Mountain Time Furniture to Mountain Time Auctions, NYSIF employee Titian

Dion on October 29, 2015 replied to Appellant with a blank Form U-3 V 4 form

which Cassidy promptly filled out and returned to NYSIF on November 3,

2015.
(EX029 & EX030)

47. Enclosed with the U-3 V 4 form was a letter from Mr. Dion. Appellant calls

the justices attention to paragraph 5 which states "One member of the old

firm transferring interest the interest must sign." Nothing more. Period.
(EX031)

48. Contrast paragraph 5 with paragraph 6b which reads "If the new firm is an

INDIVIDUAL- Owner must sign. " There is no mandate from NYSIF about who

the "member" must be in paragraph 5-- Owner, Janitor, insurance agent ,

General Manager, Co-owner. Given the tremendous damage done this

Appellant, the wording of paragraph 5 must fail Constitutional muster.

49. The last sentence on the U-3 V 4 form reads in **bold** print "Upon receipt of

this form properly completed, we will issue an endorsement effecting the

transfer of the policy, unless the conditions are such that the interest cannot

be transferred." The only "conditions" Appellant could find during the last

13

eight years of litigation were non-payment of premiums. Period. "We will

issue" gave Appellant formal expectations of transfer . A pre-deprivation

hearing would have forced NYSIF to enter into the record the statute that

allows their behavior regarding policy transfer to wander from unpaid

premiums. Appellant STRONGLY believes "...unless the conditions are met ..."

Is too vague to pass constitutional muster. Consider also that NYSIF from

November 5, 2018 through February 11, 2019 sent no notices to Appellant

that his application for transfer was not being processed.

50. Consider the payment of Claim 68495290 that Appellant settled with

Mr. William J. Farman of NYSIF as further confirmation of Appellant's

ownership of the policy. (EX032)

51. Could those "conditions" be Greed -- the ability to obtain

$28,000.00 (the initial penalty amount was more than $22,500.00) In penalties

without any underlying medical liabilities. Rather than eke out a few premium

dollars over twelve months and sustain liabilities as they might occur.

 How about employee whim?

When NYSIF failed to pay a Mountain Time hospital bill after four and one half

*14*

months, Appellant had words with Mr. Dion about the lack of speed and communication with which Mr. Dion and NYSIF acted. Three weeks later the bill was paid.

52. A few more words about the Summary Order: On page six is a remark "Cassidy was fined $22,500.00 (none of which he has paid"). Appellant would remind whoever wrote those words that it has been settled law for more than forty years that money placed in the state treasury cannot be claimed by a litigant but is lost forever. Had Appellant won his case, New York State would not have had to return any monies paid into the state treasury.

53. The writer of the Summary Order seems moved by the availability of an appeal to New York State Appellate Division, Third Department.

Buried in this case is the history of "IN RE: the claim of Christina Castillo (2017) who was fined some $86,000.00 because an illegal immigrant maid cut her hand while washing dishes and WCB did all it could to destroy Castillo's family. New York's Appellate decision found " ...NO REASON TO DISTURB THE BOARD'S DECISION..." If the 2nd Circuit wishes to push victims toward the New York State courts, let that Circuit publish the cites for one or more successful Appeals, if any exist.

15

54. The justice who wrote Appellant's summary judgment also lauds

"... the availability of a prompt post deprivation hearing." Perhaps that justice

could explain to this victim how that hearing will give an 80 1/2 year old

victim of NYSIF, WCB, and the Attorney General back

his lost years and how that hearing will restore Appellant's lost business

55. As ridiculous as it now seems, way back in 2018, Appellant was actually

happy to hear that the Attorney General would enter the case and justice

would be served and the matter resolved. Then came the false Rooker-

Feldman pleading in the May 2018 papers of the Attorney General; next the

false sworn under oath of the Rooker-Feldman argument of June 2019; the

false issuing of a judgment upon this Appellant in November 2019; how about

the submission to Plaintiff/Appellant of some 100 pages of case law two weeks

AFTER Plaintiff/Appellant had filed his papers in the dispositive summary

judgment submission. (EX033 Exhibit.)


one in the Village of Ticonderoga, County of Essex, State of New York this 18th
Day of July in the year of our Lord 2023.

ROBERT CRAIG CASSIDY
APPELLANT

16



PRESS FIRMLY TO SEAL

PRESS FIRMLY

# UNITED STATES
## POSTAL SERVICE®
# PRIORITY
## MAIL

FROM

- Expected delivery date specified for domestic use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the
Domestic Mail Manual at *http://pe.usps.com.*

** See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

# TRACKED ■ INSURED

To schedule free Package Pickup,
scan the QR code.



PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2



USPS.COM/PICKUP



PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRIORITY®
MAIL

E®

FROM:



Mr Robert C Cassidy
43 Pleasant St
Rutland, VT 05701

nestic use.

$50 of insurance (restrictions apply).*

nd many international destinations.

claration form is required.

egarding claims exclusions see the

n for availability and limitations of coverage.

1 OF 2

TO:

CLERK'S OFFICE
U.S. COURT OF APPEALS
U.S. COURT HOUSE
FOLEY SQUARE
NEW YORK, N.Y,
10007



To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

/lay 2020
l/2 x 9 1/2

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shi
This product may not be resold. EP14F © U.S. Postal Service; May 2020; All rights reserved.